# FOR PUBLICATION

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL E. DAVIS, AKA Tony Davis; VINCE FERRAGAMO; BILLY JOE DUPREE; SAMUEL MICHAEL KELLER, <br> *Plaintiffs-Appellees*, <br><br> v. <br><br> ELECTRONIC ARTS INC., <br> *Defendant-Appellant*. | No. 12-15737 <br><br> D.C. No. 3:10-cv-03328-RS <br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted
September 11, 2014—San Francisco, California

Filed January 6, 2015

Before: Stephen Reinhardt, Raymond C. Fisher
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Fisher

## SUMMARY[*]

**First Amendment / California Anti-SLAPP Statute**

The panel affirmed the district court's denial of Electronic Arts Inc.'s motion to strike a complaint, brought by former professional football players alleging unauthorized use of their likenesses in the video game series *Madden NFL*, as a strategic lawsuit against public participation (SLAPP) under California's anti-SLAPP statute.

The panel rejected Electronic Arts's argument that its use of former players' likenesses was protected under the First Amendment as "incidental use." The panel held that Electronic Arts's use of the former players' likenesses was not incidental because it was central to Electronic Arts's main commercial purpose: to create a realistic virtual simulation of football games involving current and former National Football League teams.

The panel held that the district court properly denied Electronic Arts's motion to strike under the anti-SLAPP statute because it had not shown a probability of prevailing on its incidental use defense, and its other defenses (the transformative use defense, the public interest defense, and the test formulated by *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989)) were effectively precluded by the court's prior decision in *Keller v. Elec. Arts (In re NCAA Student-Athlete Name & Likeness Licensing Litig.)*, 724 F.3d 1268 (9th Cir. 2013).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Alonzo Wickers IV (argued), Kelli L. Sager, Karen Henry, Kathleen Cullinan and Brendan Charney, Davis Wright Tremaine LLP, Los Angeles, California; Robert Van Nest, R. James Slaughter and Adam Lauridsen, Keker & Van Nest LLP, San Francisco, California, for Defendant-Appellant.

Brian D. Henri (argued), Henri Law Group, Palo Alto, California, for Plaintiffs-Appellees.

Duncan W. Crabtree-Ireland and Danielle S. Van Lier, Screen Actors Guild-American Federation of Television and Radio Artists, Los Angeles, California, for Amicus Curiae Screen Actors Guild-American Federation of Television and Radio Artists.

**OPINION**

FISHER, Circuit Judge:

We are called upon to balance the right of publicity of former professional football players against Electronic Arts' (EA) First Amendment right to use their likenesses in its *Madden NFL* series of video games. We previously held EA's unauthorized use of a former college football player's likeness in the *NCAA Football* series of video games was not, as a matter of law, protected by the First Amendment. *See Keller v. Elec. Arts* (*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*), 724 F.3d 1268 (9th Cir. 2013). In *Keller*, we rejected several of the First Amendment defenses EA raises here on materially indistinguishable grounds. EA advances one additional argument in this appeal – its use of

former players' likenesses is protected under the First Amendment as "incidental use." We disagree. We hold EA's use of the former players' likenesses is not incidental, because it is central to EA's main commercial purpose – to create a realistic virtual simulation of football games involving current and former NFL teams.

## I. Background

EA is a developer and publisher of video games, including *Madden NFL*, which EA publishes annually. *Madden NFL* allows users to play virtual football games between National Football League (NFL) teams by controlling virtual players, or avatars. EA's graphic artists and programmers create the avatars, as well as virtual stadiums, coaches, referees, fans and other audio and visual elements that allow users to experience a realistic simulation of an NFL game. Users control the movements of the avatars and the outcome of the game through the users' inputs to the game system.

Each annual version of *Madden NFL* includes all current players for all 32 NFL teams, along with accurate player names, team logos, colors and uniforms. EA has paid National Football Players Inc. – the licensing arm of the National Football League Players Association – annual licensing fees in the millions of dollars to use current players' likenesses.

From 2001 through 2009, *Madden NFL* also included certain particularly successful or popular "historic teams." EA did not obtain a license to use the likenesses of the former players on these historic teams. Although the players on the historic teams are not identified by name or photograph, each

DAVIS V. ELECTRONIC ARTS 5

is described by his position, years in the NFL, height, weight, skin tone and relative skill level in different aspects of the sport.[1]  For example, *Madden NFL* includes as a historic team the 1979 Los Angeles Rams that played in that year's Super Bowl. Vince Ferragamo, a plaintiff in this action, was a quarterback on the 1979 Rams.  He is Caucasian and was listed in the 1979 Rams media guide as a 26 year-old, six-foot three-inch, 207-pound third-year NFL player. *Madden NFL* depicts an avatar who is a quarterback for the 1979 Rams and has identical physical characteristics.  *Madden NFL* also includes the 1984 Los Angeles Rams, for which Ferragamo was again a quarterback.  The 1984 Rams media guide lists Ferragamo as a 30-year-old, six-foot three-inch, 212-pound seventh-year NFL player. *Madden NFL* depicts an avatar on the 1984 Rams with identical physical characteristics.

The plaintiffs alleged that *Madden NFL* similarly includes, without authorization, accurate likenesses of plaintiffs Michael Davis and Billy Joe Dupree, as well as roughly 6,000 other former NFL players who appear on more than 100 historic teams in various editions of *Madden NFL*. The plaintiffs asserted claims for right of publicity under California Civil Code § 3344 and California common law, conversion, trespass to chattels and unjust enrichment on behalf of themselves and all former NFL players depicted in *Madden NFL*.  EA moved to strike the complaint as a strategic lawsuit against public participation (SLAPP) under California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.  The district court denied the motion. We have jurisdiction over EA's appeal pursuant to 28 U.S.C. § 1291.  We affirm.

---

[1] For purposes of this appeal, EA concedes the *Madden NFL* series uses the plaintiffs' likenesses.

## II. Standard of Review

We review de novo the denial of a motion to strike under California's anti-SLAPP statute. *See Keller*, 724 F.3d at 1272 n.3.

## III. Discussion

### A. Anti-SLAPP motion

California's anti-SLAPP statute is "designed to allow courts 'to promptly expose and dismiss meritless and harassing claims seeking to chill protected expression.'" *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (quoting *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005)). Under the statute, "a party may file a motion to strike a cause of action against it if the complaint 'aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.'" *Id.* (alteration in original) (quoting Cal. Civ. Proc. Code § 425.16(b)(1)). To defeat a motion to strike, a plaintiff must "establish[] that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1).

The plaintiffs concede that their suit arises from an act by EA in furtherance of its right of free speech under the First Amendment. Indeed, "[v]ideo games are entitled to the full protections of the First Amendment, because '[l]ike the protected books, plays, and movies that preceded them, video games communicate ideas – and even social messages.'" *Keller*, 724 F.3d at 1270–71 (quoting *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2733 (2011)).

DAVIS V. ELECTRONIC ARTS 7

The district court denied EA's motion, however, concluding that the plaintiffs established a reasonable probability they will prevail on their claims. "'Reasonable probability' . . . requires only a 'minimum level of legal sufficiency and triability.'" *Mindys Cosmetics*, 611 F.3d at 598 (quoting *Linder v. Thrifty Oil Co.*, 2 P.3d 27, 33 n.5 (Cal. 2000)). A plaintiff must "state and substantiate a legally sufficient claim," *id.* at 598–99, based on "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based," Cal. Civ. Proc. Code § 425.16(b)(2). "'Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" *Mindys Cosmetics*, 611 F.3d at 599 (quoting *Wilson v. Parker, Covert & Chidester*, 50 P.3d 733, 739 (Cal. 2002)). "[T]he required probability that [the plaintiffs] will prevail need not be high." *Hilton v. Hallmark Cards*, 599 F.3d 894, 908 (9th Cir. 2010).

EA does not challenge the plaintiffs' ability to state or support any substantive element of their claims. Instead, EA argues it is not reasonably probable the plaintiffs will prevail, because their claims are barred by five affirmative defenses under the First Amendment – the transformative use defense, the public interest defense, the public affairs exemption of California Civil Code § 3344(d), the *Rogers* test and the incidental use defense. Although the anti-SLAPP statute "places on the plaintiff the burden of substantiating its claims, a defendant that advances an affirmative defense to such claims properly bears the burden of proof on the defense." *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 35 Cal. Rptr. 3d 31, 44 (Ct. App. 2005). EA has the burden of establishing the transformative use defense

as a matter of law. *See Keller*, 724 F.3d at 1274. On its other affirmative defenses, EA has the burden of establishing "a probability of prevailing." *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 39 Cal. Rptr. 3d 43, 53 (Ct. App. 2006). For the reasons set forth below, EA has not shown a probability of prevailing on its incidental use defense, and its other defenses are effectively precluded by our decision in *Keller*.[2] Because EA has not met its burden as to any of its affirmative defenses, the district court properly denied EA's motion to strike.

## B. Transformative use

EA contends the plaintiffs' claims are barred by the transformative use defense formulated by the California Supreme Court in *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 21 P.3d 797 (Cal. 2001). "The defense is 'a balancing test between the First Amendment and the right of publicity based on whether the work in question adds significant creative elements so as to be transformed into something more than a mere celebrity likeness or imitation.'" *Keller*, 724 F.3d at 1273 (quoting *Comedy III*, 21 P.3d at 799).

In *Keller*, we rejected EA's transformative use defense. We held the use of college athletes' likenesses in the *NCAA Football* video game series was not, as a matter of law, transformative use. *See id*. at 1277–79. We relied primarily on *No Doubt v. Activision Publishing, Inc.*, 122 Cal. Rptr. 3d. 397, 411 (Ct. App. 2011), in which the California Court of

---

[2] EA does not seek to distinguish this case from *Keller*. Instead, EA states it "raises these arguments here to preserve them for *en banc* review in this Circuit and/or United States Supreme Court review."

Appeal rejected a video game maker's transformative use defense because its video game contained "literal recreations" of members of the band "No Doubt" doing "the same activity by which the band achieved and maintains its fame." In *No Doubt*, the court of appeal held, "that the avatars appear in the context of a videogame that contains many other creative elements[] does not transform the avatars into anything other than exact depictions of No Doubt's members doing exactly what they do as celebrities." *Id*. The court concluded the "graphics and other background content of the game are secondary, and the expressive elements of the game remain manifestly subordinated to the overall goal of creating a conventional portrait of No Doubt so as to commercially exploit its fame." *Id*. (alterations and internal quotation marks omitted).

*Keller* concluded *No Doubt* "offers a persuasive precedent that cannot be materially distinguished from Keller's case." 724 F.3d at 1277. As in *No Doubt*, the *NCAA Football* game "replicated Keller's physical characteristics" and allowed "users [to] manipulate [him] in the performance of the same activity for which [he is] known in real life" in "[t]he context in which the activity occurs." *Id*. at 1276. Consequently, "[g]iven that *NCAA Football* realistically portrays college football players in the context of college football games, the district court was correct in concluding that EA cannot prevail as a matter of law based on the transformative use defense at the anti-SLAPP stage." *Id*. at 1279.

The same is true here. Like *NCAA Football*, *Madden NFL* replicates players' physical characteristics and allows users to manipulate them in the performance of the same activity for which they are known in real life – playing football for an NFL team. Neither the individual players'

10    DAVIS V. ELECTRONIC ARTS

likenesses nor the graphics and other background content are transformed more in *Madden NFL* than they were in *NCAA Football*. Indeed, EA does not attempt to distinguish *Madden NFL* from *NCAA Football*. Instead, EA contends the court erred in *Keller* by focusing on whether the individual avatars were transformed, rather than whether the work as a whole was transformative. Absent "intervening higher authority," however, we are bound by the factually indistinguishable holding in *Keller*. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).[3] Thus, EA has not shown that the transformative use defense applies to the plaintiffs' claims.[4]

### C. The public interest defense

EA next contends the plaintiffs' common law right of publicity claim is barred by the public interest defense, and their statutory right of publicity claim is barred by the "public affairs" exemption of California Civil Code § 3344(d). Under the common law public interest defense, "no cause of action will lie for the publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it." *Hilton*, 599 F.3d at 912 (quoting *Montana v. San Jose Mercury News, Inc.*, 40 Cal. Rptr. 2d 639, 640 (Ct. App. 1995)). Under the statutory "public affairs" exemption, the right of publicity recognized in California Civil Code § 3344(a) does not apply to the "use

---

[3] Further, the court expressly stated in *Keller* that, like the Third Circuit in *Hart v. Electronic Arts, Inc.*, 717 F.3d 141 (3d Cir. 2013), it "considered the potentially transformative nature of the game as a whole." 724 F.3d at 1278.

[4] Because we are bound by *Keller*, we do not reach EA's argument that *Keller* improperly failed to apply strict constitutional scrutiny to the plaintiffs' right-of-publicity claims.

of a name, voice, signature, photograph, or likeness in connection with any news, public affairs, or sports broadcast or account." Cal. Civ. Code § 3344(d).

Although California courts typically analyze the statutory and common law defenses separately, both defenses "protect only the act of publishing or reporting." *Keller*, 724 F.3d at 1282. In *Keller*, we rejected EA's reliance on these defenses, explaining that, unlike the cases on which EA relied, involving a documentary, a newspaper photograph and a game program, EA was "not publishing or reporting factual data." *Id*. at 1283. *See Dora v. Frontline Video, Inc.*, 18 Cal. Rptr. 2d 790, 791–92 (Ct. App. 1993) (holding a documentary on surfing featuring a well-known surfer was "a fair comment on real life events"); *Montana*, 40 Cal. Rptr. 2d at 640–41 (holding posters containing previously published newspaper images portraying Joe Montana's football victories were "a form of public interest presentation to which [First Amendment] protection must be extended"); *Gionfriddo v. Major League Baseball*, 114 Cal. Rptr. 2d 307, 314–15 (Ct. App. 2001) (holding "factual data concerning the players, their performance statistics . . . and video depictions" were a "recitation and discussion of factual data" protected by the First Amendment). "Put simply, EA's interactive game is not a publication of facts about college football; it is a game, not a reference source." *Keller*, 724 F.3d at 1283. It "is a means by which users can play their own virtual football games, not a means for obtaining information about real-world football games." *Id*.

*Madden NFL* is indistinguishable in this regard from *NCAA Football*. Like *NCAA Football*, although *Madden NFL* contains some factual data about current and former NFL teams and players, it is "a game, not a reference source"

12          DAVIS V. ELECTRONIC ARTS

or a "publication of facts" about professional football. *Id*. Again, in the absence of intervening higher authority, our holding in *Keller* controls. *See Miller*, 335 F.3d at 899. Thus, EA has not established a probability of prevailing on either the common law public interest defense or the "public affairs" exemption of California Civil Code § 3344(d).

### D. The *Rogers* test

EA next contends *Madden NFL* is entitled to First Amendment protection under the test formulated by the Second Circuit in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989). *Rogers* held that a literary title does not violate the Lanham Act "unless the title has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the title explicitly misleads as to the source or the content of the work." *Id*. at 999. In *Keller*, we rejected EA's argument that the *Rogers* test should be extended to right-of-publicity claims. *See* 724 F.3d at 1279–82. We explained that the *Rogers* test "was designed to protect consumers from the risk of consumer confusion – the hallmark element of a Lanham Act claim." *Id*. at 1280. In contrast, the right of publicity "does not primarily seek to prevent consumer confusion." *Id*. "Rather, it primarily 'protects a form of intellectual property [in one's person] that society deems to have some social utility.'" *Id*. (alteration in original) (quoting *Comedy III*, 21 P.3d at 804). Thus, the *Rogers* test does not apply to the plaintiffs' right-of-publicity claims.

### E. The incidental use defense

Finally, EA contends the plaintiffs' claims are barred by the incidental use defense. EA did not assert this defense in

the district court. "We apply a general rule against entertaining arguments on appeal that were not presented or developed before the district court." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (internal quotation marks omitted). That rule, however, is "discretionary, not jurisdictional." *Id*. We have recognized three circumstances in which we have discretion to reach waived issues, including "'when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed.'" *Id*. (quoting *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985)). Under the circumstances of this case, whether EA has established a probability of prevailing on its incidental use defense is a question of law that we can address on the existing record. We therefore exercise our discretion to address the issue.

The parties agree that the incidental use defense exists under California law. We therefore assume, for purposes of this opinion, that it does.[5] The parties also rely on the same cases and treatises to define the scope of the defense. Under

---

[5] Although California courts have not yet held that the incidental use defense applies to right-of-publicity claims, the defense is widely recognized. *See* 1 J. Thomas McCarthy, *Rights of Publicity and Privacy* § 6:31 (2d ed. 2014) (citing "the general rule that an insignificant or fleeting use of plaintiff's identity is not an infringement"); *Stayart v. Google Inc.*, 710 F.3d 719, 723 (7th Cir. 2013) (recognizing the incidental use as a defense to right-of-publicity claims under Wisconsin common law and statute); *Lohan v. Perez*, 924 F. Supp. 2d 447, 455 (E.D.N.Y. 2013) (applying the incidental use defense to a right-of-publicity claim under New York law); *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 648 n.6 (Cal. 1994) (en banc) (citing favorably the Restatement Second of Torts for the proposition that "mere incidental use [is] not actionable" as "appropriation of [the] commercial or other value of [a] name or likeness").

those authorities, "[a] number of factors are relevant," such as "(1) whether the use has a unique quality or value that would result in commercial profit to the defendant; (2) whether the use contributes something of significance; (3) the relationship between the reference to the plaintiff and the purpose and subject of the work; and (4) the duration, prominence or repetition of the name or likeness relative to the rest of the publication." *Aligo v. Time-Life Books, Inc.*, No. C 94-20707 JW, 1994 WL 715605, at *3 (N.D. Cal. Dec. 19, 1994) (internal citations omitted). *See also* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 28:7.50 (4th ed. 2014) ("The mere trivial or fleeting use of a person's name or image in an advertisement will not trigger liability when such a usage will have only a de minimis commercial implication."); *Stayart*, 710 F.3d at 723 ("For use of a person's name for advertising or trade purposes to be actionable . . . there must be a substantial rather than an incidental connection between the use and the defendant's commercial purpose." (internal quotation marks omitted)); *Yeager v. Cingular Wireless, LLC*, 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009) ("The rationale underlying this doctrine is that an incidental use has no commercial value."); *Preston v. Martin Bregman Prods., Inc.*, 765 F. Supp. 116, 119 (S.D.N.Y. 1991) ("Whether a use falls within this exception to liability is determined by the role that the use of the plaintiff's name or likeness plays in the main purpose and subject of the work at issue."). These factors support the plaintiffs' position here.

Under the first and second factors, the former players' likenesses have unique value and contribute to the commercial value of *Madden NFL*. EA goes to substantial lengths to incorporate accurate likenesses of current and former players, including paying millions of dollars to license

the likenesses of current players. EA has acknowledged, "[t]he Madden titles are successful in part because they allow consumers to simulate play involving any of the 32 NFL teams, using real NFL players."

Having acknowledged the likenesses of current NFL players carry substantial commercial value, EA does not offer a persuasive reason to conclude otherwise as to the former players. EA argues that, because there are several thousand players depicted in *Madden NFL*, any individual player's likeness has only a de minimis commercial value. There is no basis for such a sweeping statement. EA includes only a small number of particularly successful or popular historic teams. EA also advertises the inclusion of those historic teams in its promotional materials.[6] Indeed, we rejected EA's similar reasoning in *Keller*: "If EA did not think there was value in having an avatar designed to mimic each individual player, it would not go to the lengths it does to achieve realism in this regard. Having chosen to use the players' likenesses, EA cannot now hide behind the numerosity of its potential offenses or the alleged unimportance of any one individual player." 724 F.3d at 1276 n.7.

Under the third and fourth factors, the former players' likenesses are featured prominently in a manner that is substantially related to the main purpose and subject of *Madden NFL* – to create an accurate virtual simulation of an

---

[6] For example, the Official Game Guide for the 2006 edition of *Madden NFL* states: "Historic Rosters are back again. They allow you to play 'what if'-type games. For instance, you can replay the '78 Dallas Cowboys vs the '78 Steelers in Super Bowl XIII. Just select the teams and away you go back in time to play the game. The players do not have their actual names, but you can edit them if you want optimum realism."

16    DAVIS V. ELECTRONIC ARTS

NFL game. *See Preston*, 765 F. Supp. at 119; *Ladany v. William Morrow & Co., Inc.*, 465 F. Supp. 870, 881 (S.D.N.Y. 1978). EA has stated publicly it is dedicated to "creating the most true-to-life NFL simulation experience as possible . . . We want to accurately deliver an amazing NFL experience in our game." Accurate depictions of the players on the field are central to the creation of an accurate virtual simulation of an NFL game. *Cf. Lohan*, 924 F. Supp. 2d at 455–56 (holding the incidental use defense applied when the plaintiff's name was mentioned once in 104 lines of a song and the mention was "entirely incidental to the theme of the Song"). Therefore, EA has not established a probability of prevailing on its incidental use defense.

### IV. Conclusion

EA has not shown that its unauthorized use of former players' likenesses in the *Madden NFL* video game series qualifies for First Amendment protection under the transformative use defense, the public interest defense, the *Rogers* test or the incidental use defense. Accordingly, we affirm the district court's denial of EA's motion to strike.[7]

**AFFIRMED.**

---

[7] Because EA may preserve issues for en banc or Supreme Court review, *see Singh v. Gonzalez*, 502 F.3d 1128, 1129 (9th Cir. 2007), its appeal of issues foreclosed by *Keller* was not frivolous, and we deny the plaintiffs' request for costs and attorneys' fees pursuant to California's anti-SLAPP statute and Federal Rule of Appellate Procedure 38.