No. 12-15737

_____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

MICHAEL E. DAVIS, AKA Tony Davis; et al.,

*Plaintiffs – Appellees,*

v.

ELECTRONIC ARTS INC.,

*Defendant – Appellant.*

_____

On Appeal from the United States District Court
for the Northern District of California
The Honorable Richard Seeborg
Case No. 10-cv-03328 RS

_____

## APPELLANT ELECTRONIC ARTS INC.'S
## PETITION FOR REHEARING EN BANC

_____

DAVIS WRIGHT TREMAINE LLP
ALONZO WICKERS IV - #169454
KELLI L. SAGER - #120154
KAREN HENRY - #229707
KATHLEEN CULLINAN - #287604
BRENDAN CHARNEY - #293378
865 S. Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Facsimile: (213) 633-6899

KEKER & VAN NEST, LLP
ROBERT A. VAN NEST - #84065
STEVEN A. HIRSCH - #171825
R. JAMES SLAUGHTER - #193813
633 Battery Street
San Francisco, California 94111
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendant-Appellant
ELECTRONIC ARTS INC.

# TABLE OF CONTENTS

**Page**

I.     RULE 35 STATEMENT ................................................................1

II.    PROCEDURAL AND FACTUAL BACKGROUND ....................................3

III.   *EN BANC* REVIEW IS WARRANTED TO DETERMINE WHETHER RIGHT-OF-PUBLICITY CLAIMS ARE CONTENT-BASED. ...................................................................................5

IV.   *EN BANC* REVIEW INDEPENDENTLY IS WARRANTED BECAUSE THE PANEL'S OPINION CONFLICTS WITH U.S. SUPREME COURT AND OTHER AUTHORITY CONCERNING FIRST AMENDMENT PROTECTIONS FOR EXPRESSIVE WORKS. ...................................................................................9

     A.    Transformative Use ................................................................10

     B.    Public Interest/Public Affairs ...............................................13

     C.    *Rogers/Restatement* ............................................................14

DWT 25885673v11 0053055-000024

**Cases**

*Arenas v. Shed Media,*
881 F. Supp. 2d 1181 (C.D. Cal. 2011), *aff'd,* 462 Fed. Appx. 709
(9th Cir. Dec. 20, 2011) .......................................................................6

*Baggett v. Bullitt,*
377 U.S. 360 (1964).........................................................................13

*Brown v. EMA,*
131 S. Ct. 2729 (2011)................................................................*passim*

*C.B.C. Distrib. v. Major League Baseball Adv. Media,*
505 F.3d 818 (8th Cir. 2007) .....................................................*passim*

*Candelaria v. Spurlock,*
2008 WL 2640471 (E.D.N.Y. July 3, 2008).......................................11

*Cardtoons v. Major League Baseball Players Ass'n,*
95 F.3d 959 (10th Cir. 1996) ...............................................4, 11, 14

*Chaplinsky v. New Hampshire,*
315 U.S. 568 (1942).............................................................................7

*Citizens United v. FEC,*
558 U.S. 310 (2010)...........................................................................13

*City of Cleburne v. Cleburne Living Ctr.,*
473 U.S. 432 (1985).............................................................................2

*CMG Worldwide v. Maximum Family Games,*
N.D. Cal. Case No. 3:2014cv05124 ...................................................6

*Comedy III Prods. v. Gary Saderup, Inc.,*
25 Cal. 4th 387 (2001) ........................................................................8

*Dora v. Frontline Video,*
15 Cal. App. 4th 536 (1993) ............................................................14

*Dryer v. NFL,*
2014 WL 5106738 (D. Minn. Oct. 10, 2014), *appeal docketed,* No.
14-3428 (8th Cir. Oct. 27, 2014) ...............................................7, 14

DWT 25885673v11 0053055-000024

*ETW Corp. v. Jireh Publ'g*,
   332 F.3d 915 (6th Cir. 2003) ...................................................................*passim*

*Frazier v. Boomsma*,
   2007 WL 2808559 (D. Ariz. Sept. 27, 2007) ......................................................7

*Frosch v. Grosset & Dunlap, Inc.*,
   75 A.D.2d 768 (N.Y. App. Div., 1st Dep't 1980) .............................................11

*Gionfriddo v. Major League Baseball*,
   94 Cal. App. 4th 400 (2001) ...............................................................................14

*Guglielmi v. Spelling-Goldberg Prods.*,
   25 Cal. 3d 860 (1979) .........................................................................................10

*Hicks v. Casablanca Records*,
   464 F. Supp. 426 (S.D.N.Y. 1978) .....................................................................11

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ................................................................................5

*Hoepker v. Kruger*,
   200 F. Supp. 2d 340 (S.D.N.Y. 2002) ................................................................10

*Jenkins v Dell Publ'g Co.*,
   251 F.2d 447 (3rd Cir. 1958) ..............................................................................10

*Keller v. Electronic Arts*,
   724 F.3d 1268 (9th Cir. 2013) ....................................................................1, 4, 5

*Lindgren v. Microsoft Corp.*,
   Orange County Superior Court Case No. 20-2012-00573451-CU-
   NP-CJC ................................................................................................................6

*Lohan v. Perez*,
   924 F. Supp. 2d 447 (E.D.N.Y. 2013) .................................................................6

*Matthews v. Wozencraft*,
   15 F.3d 432 (5th Cir. 1994) ...............................................................................10

*Montana v. San Jose Mercury News*,
   34 Cal. App. 4th 790 (1995) ..............................................................................14

ii

*Montgomery v. Montgomery*,
  60 S.W.3d 524 (Ky. 2001) ...............................................................................10

*Nichols v. Moore*,
  334 F. Supp. 2d 944 (E.D. Mich. 2004) ...........................................................11

*Noriega v. Activision/Blizzard, Inc.*,
  Los Angeles Superior Court Case No. BC551747 ..............................................6

*Pavesich v. New England Life Ins. Co.*,
  58 So. 68 (Ga. 1905) ..........................................................................................2

*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992).............................................................................................7

*Roberson v. Rochester Folding-Box Co.*,
  71 N.Y.S. 876 (N.Y. App. Div. 1901), *reversed*, 64 N.E. 442 (N.Y.
  1902) ...................................................................................................................2

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) ..............................................................................10

*Rosemont Enterprises v. Random House*,
  294 N.Y.S. 2d 122 (N.Y. Sup. Ct. 1968)...........................................................11

*Ruffin-Steinback v. dePasse*,
  82 F. Supp. 2d 723 (E.D. Mich. 2000), *aff'd*, 267 F.3d 457 (6th
  Cir. 2001) ...........................................................................................................11

*Sarver v. The Hurt Locker LLC*,
  No. 11-56986 (9th Cir. submitted May 9, 2013) .................................................5

*Seale v. Gramercy Pictures*,
  949 F. Supp. 331 (E.D. Pa. 1996).....................................................................11

*Speiser v. Randall*,
  357 U.S. 513 (1958)...........................................................................................13

*Tyne v. Time Warner Entm't*,
  901 So. 2d 802 (Fla. 2005) ...............................................................................11

*United States v. Alvarez*,
  132 S. Ct. 2537 (2012).........................................................................................8

iii

DWT 25885673v11 0053055-000024

*United States v. Stevens*,
    559 U.S. 460 (2010) .............................................................................8

*Valentine v. CBS, Inc.*,
    698 F.2d 430 (11th Cir. 1983) ..........................................................10

**Rules**

Circuit Rule 35-1 .......................................................................................2

Fed. R. App. P. 35(a)(2) .............................................................................2

**Constitutional Provisions**

U.S. Const. amend. I ...........................................................................*passim*

**Other Authorities**

1 J. Thomas McCarthy, *The Rights of Publicity and Privacy* (2d ed.
    2000) ...................................................................................................8

*Restatement (Third) of Unfair Competition* § 47 cmt. c (1995) ............10

E. Volokh, *Freedom of Speech and the Right of Publicity*, 40 Hous. L.
    Rev. 903, 912 n. 35 (2003) .................................................................6

DWT 25885673v11 0053055-000024

## I.    RULE 35 STATEMENT

On January 6, 2015, the Panel affirmed the district court's denial of Electronic Arts Inc.'s ("EA") special motion to strike right-of-publicity claims filed by former professional football players Michael "Tony" Davis, Vince Ferragamo, and Billy Joe Dupree (collectively "Appellees"), arising from EA's use of their alleged likenesses in its *Madden NFL* video game.  The Panel explained that because "we are bound by *Keller* [*v. Electronic Arts*, 724 F.3d 1268 (9th Cir. 2013)], we do not reach" EA's threshold argument that California's statutory and common-law rights of publicity are content-based regulations on speech.  Opinion ("Op.") at 8 n.2.[1]  The Panel also found that the majority opinion in *Keller* "effectively precluded" EA's reliance on the transformative-use, public-interest, public-affairs, and *Rogers/Restatement* defenses, and that EA's use of Appellees' alleged likenesses was not protected under the incidental-use defense.  *Id.* at 8, 12-16.

Undersigned counsel express a belief, based on reasoned and studied professional judgment, that EA's appeal should be reheard *en banc*.  First, this appeal presents a question of exceptional importance that was not answered in *Keller* or by the Panel:  when applied to a defendant's use of an individual's name or likeness in a book, motion picture, video game, or other expressive works, is the

---

[1] A copy of the Opinion is attached as Exhibit A.

1

right of publicity a content-based restriction on speech that triggers strict constitutional scrutiny? *See* Fed. R. App. P. 35(a)(2); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 435, 438 (1985) (granting *certiorari* to decide the proper level of constitutional scrutiny). Second, the Panel's opinion conflicts with the Sixth Circuit's opinion in *ETW Corp. v. Jireh Publ'g*, 332 F.3d 915, 936-937 (6th Cir. 2003), and the Eighth Circuit's opinion in *C.B.C. Distrib. v. Major League Baseball Adv. Media*, 505 F.3d 818, 823 (8th Cir. 2007), where courts held that the First Amendment defeated right-of-publicity claims arising from the unauthorized use of athletes' names, likenesses, and biographical information in other expressive works. Because *Madden NFL* and most other expressive works are distributed across the country, the Panel's opinion affects a rule of national application in which there is an overriding need for national uniformity: the scope of federal constitutional protection for expressive works incorporating the names and likenesses of real-life individuals. *See* Circuit Rule 35-1. *En banc* review is essential to ensure that the right of publicity, which originally was developed to protect against the unauthorized use of names and likenesses in advertisements for commercial products and services,[2] does not interfere with the First Amendment

---

[2] *See, e.g., Pavesich v. New England Life Ins. Co.*, 58 So. 68, 81 (Ga. 1905) (use of plaintiff's likeness in insurance ad); *Roberson v. Rochester Folding-Box Co.*, 71 N.Y.S. 876, 877 (N.Y. App. Div. 1901) (use of plaintiff's likeness in flour ad), *reversed*, 64 N.E. 442 (N.Y. 1902).

2

right to realistically depict historical figures in expressive works.[3]

## II. PROCEDURAL AND FACTUAL BACKGROUND

Appellees contend that EA violated their statutory and common-law rights of publicity under California law by using their alleged likenesses in its *Madden NFL* video game. The district court denied EA's special motion to strike those claims, and the Panel affirmed.

*Madden NFL* is a work that combines vast amounts of biographical and statistical information about NFL teams and players with highly creative audiovisual elements and advanced software engineering. In the versions of EA's work that are at issue, a user may direct one of the 32 current NFL teams or one of 146 historic teams (like appellant Dupree's 1977 Dallas Cowboys) and 31 all-time franchise all-star teams curated by EA's game designers. Appellees' alleged likenesses appear in the work solely because they were members of Dallas Cowboys, Los Angeles Rams, and Tampa Bay Buccaneers teams that EA's game designers selected as historically significant.

---

[3] Under *Brown v. EMA*, 131 S. Ct. 2729, 2733, 2734 n.4 (2011) ("*EMA*"), there is no dispute that *Madden NFL* is an expressive work entitled to full First Amendment protection. In *EMA*, the Court held that video games "are as much entitled to the protection of free speech as the best of literature," and that any differences between video games and other works are "cultural and intellectual differences … not *constitutional* ones." *Id.* (emphasis in original).

Appellees concede that EA's work does not include their *actual* names, images, or likenesses; instead, they complain that *Madden NFL* used publicly available, historical information about them – their height, weight, years of playing experience, and relative skill level – to create digital characters (called "avatars") that allegedly conjure up their identities. EA's work incorporates much of the same biographical and statistical information about players and teams as fantasy-sports websites or trading cards, two forms of expression that other appellate courts have held to be constitutionally protected against athletes' right-of-publicity claims. *C.B.C. Distribution*, 505 F.3d at 823 (fantasy-sports website); *Cardtoons v. Major League Baseball Players Ass'n*, 95 F.3d 959, 969 (10th Cir. 1996) (parody trading cards).

Although EA's work is based on real-life historical and biographical information, it does not recreate or recount actual NFL games. The action and outcome of each *Madden NFL* game is fictional, and is driven by the user's creativity and skill. In addition, EA has designed functions that enable users to create their own counterfactual, interactive narratives, similar to video games that allow users to simulate World War II military campaigns or recent presidential elections. Like EA's *NCAA Football* game that was at issue in *Keller*, *Madden NFL* is "a work of interactive historical fiction." *Keller*, 724 F.3d at 1285 (Thomas, C.J., dissenting).

4

III.   *EN BANC* REVIEW IS WARRANTED TO DETERMINE WHETHER
       RIGHT-OF-PUBLICITY CLAIMS ARE CONTENT-BASED.

In recent years, this Court has acknowledged – but has not addressed – the

issue of whether the First Amendment provides broader protection against right-of-

publicity claims than courts previously have recognized.  In *Hilton v. Hallmark

Cards*, 599 F.3d 894, 909 n.11 (9th Cir. 2010), the Court expressly "le[ft] for

another day the question of whether the First Amendment furnishes a defense to

misappropriation of publicity that is broader than the transformative use or public

interest defenses."  The *Keller* majority did the same, specifically "reserv[ing] the

question of whether the First Amendment furnishes a defense other than [the

transformative-use, public-interest, or *Rogers/Restatement* tests]."  724 F.3d at

1274 n.5.

This question takes on greater importance as right-of-publicity claims

increasingly collide with the First Amendment right to create expressive works that

realistically depict historical figures.  Recent right-of-publicity lawsuits have

targeted a variety of expressive works, including motion pictures,[4] television

---

[4] *See, e.g., Sarver v. The Hurt Locker LLC*, No. 11-56986 (9th Cir. submitted
May 9, 2013).

5

docuseries,[5] songs,[6] works of visual art,[7] video games,[8] and even news reports.[9] In determining whether the First Amendment provides the creators of these works with more robust protection against such claims than is afforded by the current menu of balancing tests, this Court first should consider what level of constitutional scrutiny applies to right-of-publicity claims that target expressive works. *En banc* review is an appropriate means for this Court to answer that threshold question, which the *Keller* majority did not address (although it was briefed) and the *Davis* panel found to be foreclosed by *Keller*.

The answer to the question is plain: "[t]he right of publicity is clearly content-based: It prohibits the unlicensed use of particular content (people's names or likenesses)." E. Volokh, *Freedom of Speech and the Right of Publicity*, 40 Hous. L. Rev. 903, 912 n.35 (2003). Last year, a federal district court in

---

[5] *See, e.g., Arenas v. Shed Media*, 881 F. Supp. 2d 1181, 1191-1192 (C.D. Cal. 2011), *aff'd*, 462 Fed. Appx. 709 (9th Cir. Dec. 20, 2011).

[6] *See, e.g., Lohan v. Perez*, 924 F. Supp. 2d 447, 455-456 (E.D.N.Y. 2013).

[7] *See, e.g., ETW*, 332 F.3d at 936-937.

[8] *See, e.g., Noriega v. Activision/Blizzard, Inc*., Los Angeles Superior Court Case No. BC551747 (targeting use of former Panamanian dictator's Manuel Noriega's name and likeness in video game); *CMG Worldwide v. Maximum Family Games*, N.D. Cal. Case No. 3:2014cv05124 (targeting use of late General George S. Patton's name and likeness in World War II simulation video game).

[9] *Lindgren v. Microsoft Corp.*, Orange County Superior Court Case No. 20-2012-00573451-CU-NP-CJC.

6

Minnesota reached the same conclusion in a right-of-publicity lawsuit filed by former NFL players whose names and likenesses were used without permission in league-produced films. *Dryer v. NFL*, 2014 WL 5106738, *3 (D. Minn. Oct. 10, 2014), *appeal docketed*, No. 14-3428 (8th Cir. Oct. 27, 2014). The court dismissed the players' right-of-publicity claims targeting the use of their names and likenesses in league-produced films, citing the U.S. Supreme Court's instruction that "*content-based restrictions on non-commercial speech are appropriate only in the most extraordinary circumstances*." (Emphasis added.) Similarly, a federal district court in Arizona concluded that that state's right-of-publicity statute "*imposes a content-based restriction*" on speech because authorities "must know what the speaker said in order to invoke the restriction." *Frazier v. Boomsma*, 2007 WL 2808559 at *36-37 (D. Ariz. Sept. 27, 2007) (emphasis added).

Content-based regulations are subject to strict constitutional scrutiny and are presumptively invalid. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992). The Supreme Court has recognized only a few narrow exceptions to this rule for categories of expression that are "of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942). These exceptions include obscenity, defamation, fraud, fighting words, false advertising, and true threats; the Supreme Court repeatedly has been asked in

7

recent years to enlarge that list, and steadfastly has refused. *United States v. Alvarez*, 132 S. Ct. 2537, 2547 (2012); *EMA*, 131 S. Ct. at 2741; *United States v. Stevens*, 559 U.S. 460, 482 (2010).

"Before exempting a [new] category of speech from the normal prohibition on content-based restrictions … the Court must be presented with persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription." *Alvarez*, 132 S. Ct. at 2547. As a "relatively raw and brash newcomer" in American jurisprudence, 1 J. Thomas McCarthy, *The Rights of Publicity and Privacy* (2d ed. 2000), the right of publicity should not be exempt from the normal prohibition on content-based restrictions. Even if it had deeper historical roots, its concern with "exploiting the value to be obtained from merchandising the celebrity's image," *Comedy III Prods. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 400 (2001), pales as a competing state interest, particularly in comparison to the injuries raised in *Alvarez* and *Stevens*. Indeed, if statutes restricting false statements about military achievements (*Alvarez*), depictions of animal cruelty (*Stevens*), and violent video games (*EMA*) were held to be subject to strict scrutiny, so, too, are right-of-publicity statutes that restrict the use of celebrities' names, likenesses, and biographical information in expressive works. This Court should rehear EA's appeal *en banc* to address this critical issue.

## IV.  *EN BANC* REVIEW INDEPENDENTLY IS WARRANTED BECAUSE THE PANEL'S OPINION CONFLICTS WITH U.S. SUPREME COURT AND OTHER AUTHORITY CONCERNING FIRST AMENDMENT PROTECTIONS FOR EXPRESSIVE WORKS.

In *EMA*, the Supreme Court held that it was unconstitutional for the government to treat video games differently than other expressive works.  131 S. Ct. at 2733, 2737-2738, 2740.  Invalidating a restriction on speech that applied only to video games, the Court declared that "California has singled out the purveyors of video games for disfavored treatment – at least when compared to booksellers, cartoonists, and movie producers – and has given no persuasive reason why."  *Id*. at 2740.  The Court left no doubt that interactive video games, "like the protected books, plays and movies that preceded them," are core expressive works. *Id.* at 2733, 2737 n.4 (internal quotation marks omitted).

Unfortunately, the Panel's analysis – largely constrained by the majority opinion in *Keller* – calls out video games for disfavored treatment, and cannot be reconciled with authorities giving First Amendment protection to other expressive works.  *See, e.g*., *ETW*, 332 F.3d at 936-937; *C.B.C.*, 505 F.3d at 823.  *En banc* review is needed to resolve these conflicts and accord uniform First Amendment treatment to the use of names and likenesses in all forms of expression.[10]

---

[10] Because the right of publicity is a content-based restriction on speech, none of the existing balancing tests is sufficiently protective of expression.  At a minimum, however, those tests must be interpreted broadly to protect speech.

## A.    Transformative Use

The Panel concluded that it was bound by *Keller's* holding that the transformative-use analysis turns on whether the celebrity's likeness is transformed, rather than whether the defendant's work *as a whole* is transformative.  Op. at 9.  Consequently, the Panel held that EA did not show a probability of prevailing on its transformative-use defense because, like the "factually indistinguishable" video game in *Keller*, "Madden NFL replicates players' physical characteristics and allows users to manipulate them in the performance of the same activity for which they are known in real life – playing football for an NFL team."  *Id.*  Stated differently, the Panel denied First Amendment protection to *Madden NFL* because it realistically portrays Appellees in the same context in which they gained their fame.

But this restriction on realistic portrayals never has been applied to other forms of expression.  To the contrary, a long line of cases holds that the First Amendment protects the depiction of real-life figures in articles, films, books, plays and other works, whether factual or fictional.[11]  Among the uses that other

---

[11] *See, e.g., Jenkins v Dell Publ'g Co.,* 251 F.2d 447, 450-452 (3rd Cir. 1958) (tabloid news report); *Rogers v. Grimaldi*, 875 F.2d 994, 1004-1005 (2d Cir. 1989) (movie title); *Matthews v. Wozencraft*, 15 F.3d 432, 439-440 (5th Cir. 1994) (biographical novel); *Valentine v. CBS, Inc.,* 698 F.2d 430, 433 (11th Cir. 1983) (song); *Hoepker v. Kruger*, 200 F. Supp. 2d 340, 349 (S.D.N.Y. 2002) (visual art); *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 869-872 (1979) (television docudrama); *Montgomery v. Montgomery*, 60 S.W.3d 524, 529 (Ky. 2001) (music

10

circuits have protected: an artist's use of Tiger Woods' realistic likeness in a painting showing him at The Masters surrounded by other famous golfers;[12] a fantasy-sports website's use of professional baseball players' names, statistics, and other biographical information;[13] and a trading-card company's use of players' identities on parody baseball cards.[14] Other courts have held that the First Amendment barred right-of-publicity claims targeting realistic works ranging from biographies of Marilyn Monroe and Howard Hughes to docudramas about the Black Panther Party and The Temptations, and from the motion pictures *The Perfect Storm* and *Agatha* to the documentaries *Bowling for Columbine* and *Super Size Me*.[15]

---

video). The *Restatement* synthesizes this approach, stating that the right-of-publicity is "fundamentally constrained by the public and constitutional interest in freedom of expression," citing an "unauthorized print or broadcast biography," or "use of another's identity in a novel, play, or motion picture" as examples of protected works. *Restatement (Third) of Unfair Competition* § 47 cmt. c (1995).

[12] *ETW*, 332 F.3d at 937-938.

[13] *C.B.C.*, 505 F.3d at 823-24.

[14] *Cardtoons*, 95 F.3d at 968-976.

[15] *Frosch v. Grosset & Dunlap, Inc.*, 75 A.D.2d 768, 769 (N.Y. App. Div., 1st Dep't 1980); *Rosemont Enterprises v. Random House*, 294 N.Y.S. 2d 122, 129 (N.Y. Sup. Ct. 1968); *Seale v. Gramercy Pictures*, 949 F. Supp. 331, 337 (E.D. Pa. 1996); *Ruffin-Steinback v. dePasse*, 82 F. Supp. 2d 723, 730-731 (E.D. Mich. 2000), *aff'd*, 267 F.3d 457, 461-462 (6th Cir. 2001); *Tyne v. Time Warner Entm't*, 901 So. 2d 802, 810 (Fla. 2005); *Hicks v. Casablanca Records*, 464 F. Supp. 426, 433 (S.D.N.Y. 1978) (motion picture); *Nichols v. Moore,* 334 F. Supp. 2d 944, 956

Because the First Amendment has protected realistic portrayals in this wide array of expressive works, its protection cannot, consistent with *EMA*, stop short of video games. Neither the Panel nor the majority in *Keller* has provided any constitutionally sound justification for singling out realistic video games for disparate treatment. This Court should rehear this matter *en banc* to resolve this conflict.

If the Panel (and the *Keller* majority) intended their interpretation of transformative use to apply to all expressive works, the result would be no less problematic and the justification for *en banc* review no less pressing. Consider, for example, how the Panel's decision would affect two acclaimed sports documentaries: Ken Burns' iconic *Baseball*, which examines our national pastime and includes the realistic depiction of hundreds of baseball players; and the Oscar-winning *Undefeated*, which follows an underprivileged high-school football team and includes the realistic portrayal of numerous players. Both works realistically depict their subjects in their real-life settings: on the baseball diamond and the football field. These documentaries do not fictionalize their subjects and they do not parody them. They do what the Panel says makes EA's alleged depiction of

---

(E.D. Mich. 2004) (documentary); *Candelaria v. Spurlock*, 2008 WL 2640471, *3 (E.D.N.Y. July 3, 2008) (documentary).

Appellees actionable: they use the actual names and likenesses of historical figures and depict them in realistic settings.

Whether intentional or not, the Panel's interpretation of the transformative-use test inevitably will chill the creation of expressive works about real people and events. By suggesting that the First Amendment does not protect the realistic depiction of an individual in an expressive work, the Panel has eroded well-established constitutional protections (*see* cases cited in footnotes 11-15) and injected uncertainty that will cause speakers to "steer far wider of the unlawful zone," *Speiser v. Randall*, 357 U.S. 513, 526 (1958), and restrict their expression "to that which is unquestionably safe." *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964). *See also Citizens United v. FEC*, 558 U.S. 310, 329 (2010) (noting that "First Amendment freedoms need breathing space to survive" and declining to adopt an interpretation of the law "that requires intricate case-by-case determinations to verify whether political speech is banned"). Rehearing *en banc* is warranted to address this question of exception importance and to resolve a conflict in the law.

## B.    Public Interest/Public Affairs

The Panel also rejected EA's public-interest/public-affairs defense, concluding that "although *Madden NFL* contains some factual data about current and former NFL teams and players, it is a game, not a reference source or a

13

publication of facts about professional football." Op. at 11-12. The Panel explained that its holding on these defenses was mandated by the majority opinion in *Keller*. *Id.*

Here again, the Panel's conception of EA's defenses effectively draws the line of constitutional protection at video games, a result that is irreconcilable with *EMA*. If video games are "as much entitled to the protection of free speech as the best of literature," (*EMA*, 131 S. Ct. at 2733), there is no reason why information about athletes can be freely disseminated in documentaries, newspapers, game programs, videos, trading cards, web features, and posters without infringing the right of publicity,[16] but not in video games.

## C. *Rogers/Restatement*

The Panel discounted EA's argument that application of the *Rogers/Restatement* test is more predictable and more protective of free expression, explaining the majority in *Keller* previously rejected that test because it "was designed to protect consumers from the risk of consumer confusion," while the right of publicity was designed to protect a form of intellectual property. Op. at

---

[16] *Dora v. Frontline Video*, 15 Cal. App. 4th 536, 543-545 (1993) (documentary); *Montana v. San Jose Mercury News*, 34 Cal. App. 4th 790, 795-798 (1995) (newspaper and poster); *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 410 (2001) (baseball game programs); *Dryer*, 2014 WL 5106738 at *7 (footage of NFL games); *C.B.C.*, 505 F.3d at 823 (fantasy sports website); *Cardtoons*, 95 F.3d at 969 (trading cards).

14

12. At its core, the Panel has elevated the property interest in one's publicity rights into a "fundamental" right that stands on equal footing with the First Amendment. By doing so, the Panel places this Circuit in direct conflict with other circuits that have concluded that the interests advanced by publicity rights are *less compelling* than those served by, for example, copyright and trademark law. *See Cardtoons*, 95 F.3d at 976 ("[t]he justifications for the right of publicity are not nearly as compelling as those offered for other forms of intellectual property"); *ETW*, 332 F.3d at 930 ("[t]he rationales underlying recognition of a right of publicity are generally less compelling than those that justify rights in trademarks or trade secrets"). The Court should rehear this matter *en banc* to reconcile this conflict.

RESPECTFULLY SUBMITTED this 20th day of January, 2015.

DAVIS WRIGHT TREMAINE LLP
ALONZO WICKERS IV
KELLI L. SAGER
KAREN HENRY
KATHLEEN CULLINAN
BRENDAN CHARNEY

KEKER & VAN NEST, LLP
ROBERT A. VAN NEST
STEVEN A. HIRSCH
R. JAMES SLAUGHTER

By     */ s / Alonzo Wickers IV*
         Alonzo Wickers IV

Attorneys for Defendant-Appellant
ELECTRONIC ARTS INC.

15

**Form 11.**     **Certificate of Compliance Pursuant to**
**Circuit Rules 35-4 and 40-1**

---

**Form Must be Signed by Attorney or Unrepresented Litigant**
**and Attached to the Back of Each Copy of the Petition or Answer**

---

**(signature block below)**

---

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for panel rehearing/petition for rehearing en banc/answer is: (check applicable option)

___X___ Proportionately spaced, has a typeface of 14 points or more and contains __3,439_____ words (petitions and answers must not exceed 4,200 words).

**or**

_____ Monospaced, has 10.5 or fewer characters per inch and contains _____ words or _____ lines of text (petitions and answers must not exceed 4,200 words or 390 lines of text).

**or**

_____ In compliance with Fed. R. App. 32(c) and does not exceed 15 pages.

/s/ Alonzo Wickers IV
_____
Signature of Attorney or
Unrepresented Litigant

**(New Form 7/1/2000)**

| 9th Circuit Case Number(s) | 12-15737 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# CERTIFICATE OF SERVICE

## When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | Jan 20, 2015 | .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

| Signature (use "s/" format) | / s / Yvonne Godson |
|---|---|

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# CERTIFICATE OF SERVICE

## When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) |  | .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

| |
|---|
| |

| Signature (use "s/" format) | |
|---|---|